## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: | ) |
| | ) Case no. |
| ACASS SYSTEMS LLC | ) |
| | ) Chapter 11 |
| Debtor. | ) |

### DECLARATION OF AARON CASS IN SUPPORT OF
### THE CHAPTER 11 PETITION AND FIRST DAY PLEADINGS

I, Aaron Cass, declare as follows:

1. I am the Manager and 97 % majority owner of ACASS-Systems, LLC ("ACASS" or the "Debtor"). In this capacity, I am familiar with the Debtor's day-to-day operations, business and financial affairs, and books and records, and I have personal knowledge the matters contained herein.

2. To enable the Debtor to minimize the adverse effects of the commencement of the above-captioned chapter 11 case (the "Chapter 11 Case") on its business, and thereby preserve and maximize the value of its estate, the Debtor has requested various types of relief in the "first day" pleadings and applications (each, a "First Day Pleading") described below.[1] I am familiar with the contents of each First Day Pleading (including the exhibits and schedules thereto) and I believe that the relief sought in each First Day Pleading: (a) is necessary to enable the Debtor to operate in Chapter 11 with minimal disruption or loss of productivity and value; (b) constitutes a critical element to achieving a successful result in this chapter 11 case; and (c) is in the best interest of the Debtor's estate and its creditors.

3. Except as otherwise indicated, all facts set forth herein are based upon: (a) my personal knowledge; (b) information learned from my review of relevant documents; and (c)

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in their respective First Day Pleading.

information supplied to me by other members of the Debtor's management and advisors. I am authorized to submit this Declaration on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4. On August 30, 2018 (the "Petition Date"), the Debtor filed its voluntary petition in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code, commencing the Debtor's Chapter 11 Case. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2] No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case and, as of the date of the filing of this Declaration, no official committees have been appointed or designated.

## I.    BACKGROUND

5. I formed ACASS on December 29, 2010. The business concept for ACASS began in Australia on January 1, 2011 by me designing a new type of barricade to be used in live entertainment shows. Using my own money, I first built 120 sections in late 2011 and immediately began renting them out in the entertainment industry.

6. In early 2013, I sold my assets in Australia and moved myself and ACASS to Omaha to find investors and contracts for ACASS to begin manufacturing the sections itself.

7. By late fall 2013, ACASS landed its first large manufacturing contract, to manufacture large video LED frames. At that time, ACASS used a business advisor to connect with Security First Bank in Lincoln ("Security First"), which provided the company with a $350,000 line of credit.

8. Through 2014, ACASS amassed a book of clients for its current product and worked on developing new products as new clients surfaced with new requests. However, ACASS failed

---

[2] For the remainder of this declaration, reference to Title 11 of the United States Code will be to section number only.

to secure investors or partners to supply the company with needed capital to meet the demand. Thus, by the end of 2014, ACASS had maxed out its line of credit with Security First and fallen behind on its payments to its vendors.

9. Fortunately, ACASS's business advisor was able to pull together a group of investors who infused new capital into the company, set up a board of directors (the "Board") with full control of the company (with minor ownership), and agreed on a business plan that was executed through weekly meetings.

10. By mid-2015, ACASS was on track with the plan the Board had put in place, but was again in need of a cash investment to further the business plan and fund the build and delivery required under its contracts.

11. The Board found Capital Advantage, now known as Bizcapital Bidco I, LLC ("BizCapital"), who agreed to loan $2.7 M to ACASS.

12. By the end of 2015, ACASS's revenue growth had doubled. Going into 2016, the company had a large pipeline of projects, but had continuing cash-flow problems as the loan agreement with BizCapital constricted the use of the funds to the point of hampering potential business.

13. After the Board explored a potential buy-out by a Chinese firm interested in ACASS's intellectual property in the summer of 2016, the Board approved an additional $2.5M loan from BizCapital, a portion of which was used to pay down past debt.

14. In late 2016, ACASS landed a large and prominent job and was subsequently slammed with work through early 2017. In May 2017, the company was still in need of equity investment, however, because the loan payments to BizCapital were taking a large chunk out of

the operating account. At this point, the Board restricted the ability of ACASS to find outside investors and requested that I, the majority owner, transfer my interest in ACASS to the Board.

15. Instead, in the summer of 2017, ACASS offered to buy out the Board with money borrowed from DIV Investments, LLC ("DIV"). After investigating the company, DIV agreed to invest in ACASS to fund jobs and grow the company in order to eventually bring in new investors found by DIV, in conjunction with Charter Hill Partners, LLC ("Charter Hill").

16. At the direction of DIV, in the first quarter of 2018, ACASS entered into contracts in excess of $4.8M—while in the previous year, ACASS had contracts totaling $5.1M. Much of investment from DIV was used to grow and build rental assets to meet the company's obligations under these contracts.

17. Pursuant to its growth strategy, DIV agreed to take on raising short term capital, while Charter Hill agreed to organize long-term capital investment. Neither party, however, was successful.

18. By Mid-June, 2018, faced with DIV and Charter Hill's failure, ACASS approached its main creditor, BizCapital, for a much-need cash infusion. BizCapital was unwilling to loan any funds, however, unless DIV converted its debt, then about $5.1M, to equity. DIV refused.

19. After failing to secure new investment, ACASS quickly laid off all non-essential personnel to reduce payroll and begin to fulfill its contracts. ACASS also began turning away jobs because of its cash-flow problems and the necessity of a large cash infusion at the front end of its jobs.

20. ACCASS continued to seek out its own investors, but the amount of debt on ACASS's books concerned any and all prospects.

21. After running out of money and failing to come to an agreement with DIV to convert its debt to equity to make ACASS a more attractive investment, ACASS let go all key employees and shut down shop.

## II.     FIRST DAY PLEADINGS

22. I have reviewed the other pleadings filed contemporaneously with this Declaration. To the best of my knowledge, information and belief, the facts alleged in those pleadings are true and correct, and I would so testify if called as a witness. In addition, I note that the Debtor will suffer immediate and irreparable harm if the "first day" relief requested in those pleadings is not granted. Accordingly, I support the relief requested therein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 31, 2018

　　　　　　　　　　　　　　　　　　　　__/s/Aaron Cass_____
　　　　　　　　　　　　　　　　　　　　Aaron Cass