**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-81299-SKH |
| ACASS SYSTEMS LLC | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION TO APPROVE**

**STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY**

Allegiant Partners, Inc., a secured creditor, hereby moves for court approval of the attached Stipulation for Relief from the Automatic Stay pursuant to Fed. Bankr. Rule 4001(d). In support of this motion, movant shows the court as follows:

1. Movant financed the purchase by the Debtor of two hundred forty (240) PH3 9mm Indoor LED displays, along with packaging, parts and accessories, pre-petition. The displays were delivered pre-petition but according to the Debtor, they have not been removed from packaging and are sitting in Debtor's place of business in approximately the same condition as when delivered. True and correct copies of the financing documents, along with the UCC financing statement filed by movant, are attached hereto as Exhibits A and B.

2. Movant has a perfected purchase money security interest in the displays because Movant financed the acquisition and it filed its UCC financing statement prior to delivery.

3. Debtor, by and through counsel, has stipulated that relief from the automatic stay should be granted to Allegiant Partners, under the terms set forth on the stipulation attached hereto as Exhibit "C". Pursuant to the stipulation, if the displays are returned in substantially the same condition as when they were delivered, movant shall be

deemed to have waived any unsecured deficiency claim it might have against Debtor which may result from the later liquidation and sale of the displays; provided that nothing in the stipulation or this motions constitutes a release or waiver nor otherwise affects the liability of any guarantor. Once the court approves the stipulation, movant will arrange to have the displays removed from Debtor's premises.

4. The Debtor has made it clear that the displays are not to be included in the sale of assets that the Debtor has proposed.

Wherefore, Movant prays that the Court grant approval of the attached Stipulation agreeing to relief from the automatic stay, for an order recognizing and granting such relief, and for such other and further relief as the court deems just and equitable.

**ALLEGIANT PARTNERS, INC.**

By: s/T. Randall Wright
Baird Holm LLP
1500 Woodmen Tower
1700 Farnam St.
Omaha, NE 68102
T: 402.636.8228
rwright@bairdholm.com
Counsel for Allegiant Partners, Inc.

**NOTICE UNDER Rule 4001(d)**

**TO: ALL CREDITORS AND PARTIES IN INTEREST**

NOTICE IS HEREBY GIVEN pursuant to Rule 4001(d) of the Federal Rules of Bankruptcy that any objection or resistance with respect to the foregoing Motion to Approve Stipulation for Relief must be filed with the Clerk of the United States Bankruptcy Court, 460 Federal Building, 100 Centennial Mall North, Lincoln, Nebraska 68508 and served upon T. Randall Wright, Plaintiff's counsel of record, not later than 14 days after service of this Motion, i.e., by November 23, 2018. Any resistance shall be filed If a resistance is not filed and served by the Resistance Date, the Court will consider ruling on the matter without further notice or hearing.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to the following:

Andrew R. Biehl
abiehl@walentineotoole.com

Jerry Jensen
ustpregion13.om.ecf@usdoj.gov
Jerry L. Jensen
Jerry.L.Jensen@usdoj.gov

Amanda J. Karr
amanda.j.karr@nebraska.gov

Michael F. Kivett
mfkivett@walentineotoole.com

Craig A. Knickrehm
cknickrehm@walentineotoole.com

jellis@womglaw.com

Douglas E. Quinn
dquinn@mcgrathnorth.com,
eglasch@mcgrathnorth.com

Katherine Rosenblatt
katherine.rosenblatt@stinson.com

Matthew V. Rusch mrusc@eslaw.com,
lroge@eslaw.com
Frederick D. Stehlik
fstehlik@grosswelch.com
lallmendinger@grosswelch.com

Patrick Raymond Turner
patrick.turner@stinsonleonard.com

Zachary W Lutz-Priefert
zlutzpriefert@grosswelch.com,

and I hereby do certify that on November 9th, 2018, I mailed by United States Postal Service the document to the following non-CM/ECF participants who have requested notice; and to the 20 largest unsecured creditors:

I.A.T.S.E. Local #42
5418 S. 27th Street, Ste. 4
Omaha, NE 68107-3492

ACT Lighting, Inc.
PO Box 71460
Cincinnati, OH 45271-4760
Barco Inc.
3059 Premiere Pkwy., Ste. 400
Duluth, GA 30097

Carolina Motion Controls
1200 Woodruff Rd.
H-27
Greenville, SC 29607

Customized Rigging
16302 Birch Ave.
Omaha, NE 68102

Suiter Swantz PC LLO
14301 FNB Parkway, Ste. 220
Omaha, NE
Kris Cross LLC

K Electric Company, Inc.
8916 H Street
Omaha, NE 68127

307 Willoughby Blvd.
Greensboro, NC 27408

Patrick Smith
8811 S. 63rd Street
Lincoln, NE 68516

RSM US LLP
5155 Paysphere Circle
Chicago, IL 60674

Snelling Staffing Services
12100 W Center Rd.
Ste 1201
Omaha, NE 68144

Super Bright LEDs, Inc
4400 Earth City Expressway
Earth City, MO 63045-1328
Tri-V Tool and MFG
13434 Centech RD
Omaha, NE 68138

Wade Duncan
2947 Ogden Avenue
Missouri Valley, IA 51555

Passive Labrador, LLC
Michael P. Mellen
4848 N Goldwater Blvd., Apt. 2085
Scottsdale, AZ 85251

Payroll Funding Company LLC
10785 W Twain Ave., Ste. 200
Las Vegas, NV 89135
Serapid USA
34100 Mound Road
Sterling Heights, MI 48310

68154DIV Investments - NGC Group
Attn: Justin Hernandez
17310 Wright St. #104
Omaha, NE 68130

T D Custom Machining Fabrication
11523 S 60th St.
Papillion, NE 68133

Vision and Control Systems, LLC
Brad Steele
2233 US Highway 22
Union, NJ 07083

s/T. Randall Wright

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

| No. 101768 | EQUIPMENT FINANCE AGREEMENT | | | | Page 1 of 2 |
|---|---|---|---|---|---|
| Debtor:<br>Acass Systems LLC<br>2215 Leavenworth St<br>Omaha, NE 68102 | | | | Creditor:<br>Allegiant Partners Incorporated<br>1550 Parkside Drive, Suite 240<br>Walnut Creek, CA 94596 (800)604-4817 | |
| EQUIPMENT: See Equipment Schedule No. 101768 | | | | EQUIPMENT COST: Please refer to the Disbursement Authorization | |
| TERM (months) | MONTHLY PAYMENT | ADVANCE PAYMENTS and FEES | | SECURITY DEPOSIT | TOTAL DUE NOW*<br>(please refer to Invoice No. ) |
| | | 2 ADVANCE PAYMENT(S) | FEES | | |
| 48 | $3,261.50 | $6,523.00 | $375.00 | $0.00 | $6,898.00 |
| Commencement Date : | | (to be inserted by Creditor) | | *Total Due Now must be paid in full at time of execution. See Section 1. | |

**TERMS AND CONDITIONS**

This Equipment Financing Agreement ("EFA") entered into between the Creditor and Debtor named above is a commercial agreement to finance personal property for business purposes. Creditor hereby agrees to finance for Debtor the items together with all parts, manuals, records, licensee rights, accessories, attachments, repairs, improvements, replacements, and any proceeds thereof, including insurance proceeds (collectively the "Equipment") described above and in any applicable "Equipment Schedule" made a part hereof. This EFA includes each executed Equipment Schedule, supplement, amendment and authorization, if any. Provided that all of Creditor's funding requirements have been met and Debtor has not defaulted under this EFA, Creditor shall pay for the Equipment in accordance with the Disbursement Authorization executed by Debtor.

1. TERM AND PAYMENTS. All of the amounts shown above are subject to the terms and conditions herein. This is a non-cancelable contract. Debtor shall pay in U.S. dollars in advance to Creditor at Creditor's address herein or to a location Creditor may direct in writing, for the initial number of consecutive months shown above (the "Term"), and continuing until all of Debtor's obligations to Creditor have been fulfilled, the monthly payments described above, plus any applicable sales and/or use taxes, if any (which are subject to change by the taxing authorities), and other applicable charges as set forth herein (each a "Monthly Payment"), which shall be due upon the due dates established herein, without deduction or set-off, and whether or not an invoice is provided. *The Total Due Now amount shall be paid to Creditor upon Debtor's signing of this EFA (or a later date as Creditor may designate) and the Advance Payments included therein shall be applied to the first Monthly Payment which is due by the Commencement Date (and the remainder of the Advance Payments received, if any, shall be posted toward the last Monthly Payment(s) of the Term when it becomes due). Subsequent Monthly Payments during the Term shall fall due on a consistent due date (either the 1st, 15th or 25th as determined by Creditor) in each successive month after the Commencement Date. The "Commencement Date", to be inserted herein, shall be, at the option of Creditor, (a) the date that any of the Equipment is accepted by Debtor; (b) a deemed acceptance date 3 days after delivery of any Equipment to Debtor (unless Creditor has received prior written notice of non-acceptance from Debtor); (c) the date that Debtor authorizes Creditor in writing to disburse funds to an Equipment supplier ("Supplier"); or (d) another date agreed upon by Creditor and Debtor. If Creditor pays a Supplier for all or part of the Equipment in advance of the Commencement Date, Debtor shall pay, upon Creditor's request, an initial interim payment amount to Creditor equal to 1/30th of the first Monthly Payment multiplied by the number of days between (a) the date of Creditor's first such disbursement to a Supplier and (b) the Commencement Date of this EFA. Creditor may convert Debtor's checks into direct automatic clearing house ("ACH") debits. Debtor may prepay Monthly Payments only in accordance with the express provisions hereof. Creditor may apply remittances received to the oldest unpaid amounts first. If a default has occurred, Creditor may apply remittances in any order.

2. LATE CHARGES. Time is of the essence. Debtor shall pay Creditor upon demand (a) a late charge equal to 10% of any Monthly Payment or other amount or other performance of Debtor due hereunder which is not received or performed when due, for each month in which said amount or performance continues past due or, if less, the maximum late charge permitted by law, and (b) a $25 fee for each remittance of funds returned unpaid.

3. SECURITY INTEREST. Debtor hereby grants to Creditor a security interest in the Equipment under the California Commercial Code ("UCC") effective as of Debtor's execution of this Agreement or when Debtor acquires an interest in the Equipment. The security interest secures the performance of all Debtor's obligations hereunder and under any other agreement between Debtor and Creditor. Debtor shall ensure that Creditor's security interest is and shall remain a sole and valid first priority security interest, free and clear of all other liens, claims and encumbrances. Debtor agrees that the Equipment shall remain personal property regardless of its attachment to realty. Debtor shall provide Creditor all cooperation necessary in order for Creditor to promptly obtain proper registrations, certifications and titles, if any, for the Equipment with Creditor listed on the title as lienholder.

4. TAXES, FEES. Debtor shall pay when due, either directly or to Creditor upon demand, all taxes, filing fees, license fees, registration fees, title fees, interest, penalties, and other assessments relating to the Equipment.

5. GOVERNING LAW, WAIVERS. This EFA is governed by the laws of the State of California, provided, however, that any rule of construction to the effect that ambiguities are resolved against the drafting party shall not apply to the interpretation of this EFA. This EFA has been accepted and entered into at Creditor's principal place of business in California. Any legal action related, directly or indirectly, to this EFA shall, at Creditor's option, be maintained only in state or federal courts in California. However, Creditor may also maintain any such action in any other court having proper jurisdiction. Debtor consents to such jurisdiction and venue and waives any objection thereto. TO THE EXTENT PERMITTED BY LAW, DEBTOR WAIVES ALL RIGHTS IT MAY HAVE TO: (A) NOTICE AND JUDICIAL HEARING WITH RESPECT TO CREDITOR'S REPOSSESSION OF THE EQUIPMENT UPON DEBTOR'S DEFAULT; (B) A TRIAL BY JURY; (C) INTERPOSE ANY COUNTERCLAIMS AGAINST CREDITOR THROUGH LITIGATION; AND (D) THE BENEFITS OF STATUTES OF LIMITATIONS.

6. DISCLAIMER OF WARRANTIES. THIS EFA IS SOLELY A FINANCING AGREEMENT. CREDITOR HAS NOT HAD AND WILL NOT HAVE ANY INVOLVEMENT IN THE EVALUATION, SELECTION, APPROVAL AND ACCEPTANCE OF ANY EQUIPMENT, SUPPLIER AND SHIPPER THEREOF, AND CREDITOR MAKES NO WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. Creditor is not responsible for delivery, installation, inspection, condition, quality, certification, performance, insurance and tax status of the Equipment. Debtor shall continue paying all Monthly Payments when due and performing all of its other obligations hereunder regardless of the Equipment status, such as whether or not all or part of the Equipment is damaged, idle, inaccessible, inoperable, missing, abandoned, relinquished, repossessed, being repaired, or is not being used for any reason.

7. NON-CANCELABLE AGREEMENT, NO OFFSET, NO AGENCY. DEBTOR MAY NOT CANCEL OR TERMINATE THIS EFA FOR ANY REASON. All of Debtor's obligations are irrevocable, unconditional and not subject to any reduction, set-off, defense, or counterclaim. Creditor shall not be liable to Debtor for any lost profits or damages. If the Equipment is not properly delivered or installed, does not operate as represented or warranted by the Supplier, manufacturer or other party, is uninsured or is unsatisfactory for any reason, Debtor's only remedy, if any, shall be against the Supplier or manufacturer of the Equipment. So long as this EFA is not in default, Creditor shall assign to Debtor those third party warranties received by Creditor for the Equipment, if any, and Debtor shall keep Creditor informed of such warranties. Debtor acknowledges that (a) no Supplier or manufacturer of the Equipment, nor any other third party, nor any agent or employee of any of them is an agent of Creditor, (b) no such person or entity is authorized to waive or alter any term hereof, and (c) no representation by any such person or entity is binding on Creditor or affects Debtor's duty to remit Monthly Payments on time and perform its obligations hereunder. Debtor agrees to all terms and conditions on each page herein.

**This Finance Agreement and any document pertaining to this Finance Agreement may be executed in counterparts and the faxed, scanned or electronic transmission of such document shall have the same force and effect as delivery of an original.**

CONTINUED ON PAGE 2

| Debtor: Acass Systems LLC | Creditor: Allegiant Partners Incorporated |
|---|---|
| The undersigned affirms that he/she is authorized to execute this EFA on behalf of Debtor. DEBTOR AGREES TO ALL O IONS HEREIN. DEBTOR MAY NOT CANCEL THIS EFA. | This EFA shall not be binding on Creditor until it has been accepted and executed by an officer of Creditor. |
| X Aaron Cass ___ Signature ___ 7/12/2018 Date | X ___ Signature ___ Date |
| Aaron Cass NAME (printed) ___ Member Title | ___ NAME (printed) ___ Title |

E1004

Rev 10/15

EXHIBIT A

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

**Equipment Financing Agreement No. 101768 - Page 2 of 2**

8.LOCATION OF EQUIPMENT, INSPECTIONS. Debtor is shall make the proper site preparations prior to the installation of the Equipment and shall keep the Equipment within the U.S.A. in Debtor's possession in a secure and appropriate place at Debtor's address specified herein and not move it therefrom without Creditor's prior written consent. Upon request, Debtor shall promptly advise Creditor of the Equipment's exact location and of all future locations and the dates pertaining thereto. Debtor shall provide Creditor with satisfactory third party waivers that grant Creditor reasonable access to exercise its rights inspect and repossess the Equipment.

9.USE AND MAINTENANCE OF THE EQUIPMENT. Debtor shall pay for when due all site preparations and ongoing costs related to operating and housing the Equipment including labor, supplies, materials, consumables and any premises rent. Debtor shall use each item of Equipment only for business purposes and in compliance with its intended use and calibration, all applicable laws, all license agreements, all manufacturer's and Supplier's instructions and warranty requirements, all insurance policies, and within its rated capacity. Debtor shall not use the Equipment in any way that detracts from its intended economic value or functional utility. Debtor agrees that no substance, including hazardous and radioactive material, that may damage, injure or contaminate the Equipment or its users or surroundings, may be used in conjunction with or allowed within proximity of the Equipment. Debtor shall, at its expense, maintain the Equipment in good repair, condition and working order, and in compliance with all laws and regulations, and preserve the Equipment's accurate identification marks and maintenance records. Debtor shall promptly notify Creditor in advance of any repairs or alterations expected to cost more than $1,000, and at the option of Creditor, Debtor shall cause qualified parties to promptly make all repairs, shall inspect and accept all repairs when properly completed and shall promptly pay for all repairs when due. Debtor will not make any alterations, replacements or substitutions of any item of Equipment without Creditor's advance written consent. All such additions and improvements shall be deemed accessions or accessories thereto and shall not be removed.

10.RISK OF LOSS, INSURANCE, POWER OF ATTORNEY. Debtor shall at all times after executing this EFA bear the entire risk of loss, damage and non-use relating to the Equipment and/or caused by the Equipment or from any cause whatsoever including all risks relating to government regulation, impracticability of use, obsolescence, shortages of any kind, software and system security (each a "Loss"). If any item of Equipment is missing, damaged, unusable or subject to any Loss or claim whatsoever, Debtor shall immediately notify Creditor thereof and abide by Creditor's instructions. Creditor, in its sole discretion, shall direct Debtor, at Debtor's expense and subject to further provisions herein, to immediately (a) repair or restore such Equipment to Creditor's satisfaction, (b) replace such Equipment with comparable Equipment of equal purpose and value, or (c) pay Creditor an amount equal to the sum of (i) all amounts due and owing to Creditor hereunder on the date of such Loss ("Loss Date"), (ii) the present value as of the Loss Date (using a discount value of 3% per annum) of all Monthly Payments for the remaining applicable Term, and (iii) interest on all the foregoing until paid in full. Immediately after executing this EFA, Debtor shall purchase, promptly pay for and continuously maintain all-risk insurance property in its own name insuring all the Equipment for its full replacement cost against all risks of loss or damage from every cause whatsoever, and naming Creditor, its successors, and assigns as the sole Loss Payee, until all of Debtor's obligations to Creditor have been fulfilled. Proceeds of property insurance claims shall go to Creditor, and at Creditor's option, shall be applied toward any amount(s) specified in clause (a) or (b) and (c) of this Section. If Debtor fails to provide proof of insurance acceptable to Creditor, Creditor may secure insurance in such form and amount as Creditor deems necessary and Debtor agrees that in addition to insurance premiums Creditor may charge Debtor interest and/or an administrative fee which may result in a profit to Creditor. Debtor understands that if Creditor procures insurance Debtor may pay more for it than if Debtor had procured insurance. Upon signing this EFA, Debtor shall also maintain combined general public liability, personal injury and third party property damage insurance with a single limit of $1,000,000 per occurrence, naming Creditor, its successors, and assigns as an Additional Insured. Debtor shall provide Creditor with satisfactory evidence of the required insurance at all times. All insurance shall (d) be in a form and with companies satisfactory to Creditor, (e) provide at least 30 days advance written notice to Creditor of material change, expiration, nonrenewal, and cancellation, (f) provide that the coverage is "primary", and (g) provide that such insurance as to Creditor shall not be adversely affected by any act, omission or neglect of Debtor. Debtor hereby irrevocably appoints Creditor as Debtor's lawful attorney-in-fact, effective immediately, with full power in Debtor's name or otherwise, to do all things, including without limitation making and settling claims, receiving payments, and endorsing documents, checks and drafts, necessary or advisable to secure payments due from every insurance policy contemplated hereunder, and to file any applicable title or registration documents, UCC financing statements and insurance claims and to take any actions Creditor deems advisable, which appointment as attorney is coupled with an interest. Debtor shall immediately inform Creditor of and deliver to Creditor upon Debtor's receipt, all correspondence, notices, work orders, estimates, appraisals, checks, payments, titles, registrations and other documents relating to every such insurance policy.

11.INDEMNITY. Creditor shall not be liable to Debtor or any other person or entity for any loss or damage occurring in connection the Equipment and this EFA including any loss or damage to any person and to any property left, stored, attached to, transported or inspected in, on or by any Equipment. Debtor will indemnify Creditor, hold Creditor harmless from, and, at Creditor's option and Debtor's expense, defend Creditor against every claim, action, liability, loss, damage, expense, attorneys' fees and court costs, incurred by or asserted against Creditor related to this EFA and the Equipment, including without limitation any strict liability claim, whenever made.

12.REIMBURSEMENT TO CREDITOR. If this EFA is not consummated for any reason for which Creditor is not solely responsible then Creditor may collect from Debtor or retain any amounts received by Creditor pertaining to the transaction, as reimbursement for expenses in preparing for and processing the transaction. Debtor shall also promptly pay Creditor for all expenses, including collection costs, attorneys' fees, court costs, Equipment Inspections and Disposition costs incurred by Creditor in obtaining any information hereunder, exercising its remedies hereunder, or otherwise enforcing this EFA and with respect to the defense of any claims, actions, or causes of action arising out of this EFA , regardless of whether or not (a) a legal action is filed, (b) such an action is dismissed, and/or (c) Creditor incurs such costs or expenses in any bankruptcy proceeding. If Debtor fail to perform any one or more of its obligations hereunder, Creditor shall have the right, but not be obligated, to perform (without releasing Debtor for its failure to perform) such obligations, in which event Debtor shall pay Creditor on demand the entire cost of Creditor's performance, plus interest thereon. Debtor shall promptly inform Creditor of and upon Debtor's default, immediately assign to Creditor all of the rights and warranties Debtor may have pertaining to the Equipment.

13.INFORMATION. Until all of Debtor's obligations to Creditor have been fulfilled, Debtor authorizes Creditor to obtain credit reports and make such other credit inquiries as Creditor requires. Debtor shall promptly deliver to Creditor information and documents as Creditor requests from time to time regarding the Equipment and its operation, ownership, condition, location, title, registration, certification and license, and the management, financial condition and business practices of Debtor and of the Guarantors and Affiliates, including the most recent tax returns, financial statements and bank statements.

14.NO ASSIGNMENT, NO SALE OF EQUIPMENT, BUSINESS. Without Creditor's prior written consent and Creditor's receipt of satisfactory documents and fees, Debtor shall not, voluntarily or involuntarily, (a) assign, sell, lease, transfer, assign an interest in, relinquish control of or create or allow any lien (other than Creditor's security interest) against, this EFA and any item of Equipment or any interest herein or therein; (b) transfer any of its rights or obligations hereunder; (c) sell, lease, transfer, assign or close a substantial part of its business; and (d) sublease, lend or permit any item of Equipment to be used or moved by any other person or entity. Creditor may sell or assign this EFA and Creditor's interest in any item of Equipment, with or without notice to Debtor. Debtor acknowledges that any such assignment by Creditor will not materially change Debtor's duties, burden or risk hereunder. Each assignee of Creditor shall have all of Creditor's rights but none of Creditor's obligations. Debtor shall acknowledge in writing to Creditor's satisfaction Debtor's receipt of every such notice of assignment, shall pay all assigned amounts as the notice directs, and shall not assert against any such assignee any defense, claim or set-off. Subject to the foregoing, this EFA is binding on the heirs, successors, and assigns of Debtor and Creditor.

15.DEFAULT. Any of the following shall constitute a "default" by Debtor hereunder: (a) Debtor fails to pay any amount due under this EFA by its due date; (b) Debtor fails to timely perform: (i) any of its other obligations hereunder, (ii) any of its obligations under any other agreement between Debtor and Creditor or in any other agreement relating to the Equipment; (c) Debtor dissolves, ceases doing business as a going concern, or is merged into or acquired by any other entity or owner; (d) Debtor transfers a material portion of its assets, becomes insolvent or incompetent or is the subject of a bankruptcy filing or a receiver; (e) any written or oral statement, representation or warranty ever furnished or made by Debtor or made on Debtor's behalf shall be false, misleading or unperformed in any material respect; (f) any item of Equipment cannot be located or becomes subject to any lien, levy, seizure, theft, attachment, abandonment, execution or material damage; (g) Debtor is convicted or indicted for a material offense or incurs a material judgment or tax lien; (h) Debtor changes its name, state of organization or incorporation and location without providing Creditor with 30 days prior written notice thereof; (i) any Letter of Credit made in favor of Creditor in conjunction with this EFA shall expire, terminate or not be renewed or any notice is given that any such action may occur; (j) Creditor in good faith deems itself unsecured as a result of a material adverse change in Debtor's financial condition, manner of operation, ownership or otherwise; (k) a default occurs under a real estate lease or mortgage for real property where an item of Equipment is located.; (l) Debtor dies or is declared incompetent; and/ or (l) any event described in this section occurs with respect to any guarantor ("Guarantor") of Debtor's obligations to Creditor or to any Affiliate of Debtor. "Affiliate" means any entity or person associated with Debtor through common ownership, management or control.

16.DEFAULT REMEDIES. On any default by Debtor, Creditor shall have all rights and remedies of a secured party under the UCC and may exercise any of the following default remedies: (a) declare all Monthly Payments and other amounts due and to become due under this EFA immediately due and payable; (b) apply all or part of any Security Deposit, letter of credit, Advance Payments and other security and amount held by Creditor to any obligation of Debtor without adversely affecting any declaration under clause (a); (c) terminate this EFA and retain all prior payments; (d) require Debtor, at its expense, to immediately assemble and properly deliver all or part of the Equipment, as Creditor shall determine in its sole discretion, to Creditor at such place(s) as Creditor may specify, in substantially the same condition as when delivered to Debtor, ordinary wear and tear from proper use excepted, clean and fit for retail resale, in full working order and in complete repair, together with any manuals, instructions, agreements, maintenance records and certifications relating to the Equipment.; (e) immediately take possession of the Equipment or render it unusable without demand or notice, wherever located, without any court order or other process of law and without incurring any liability for any damages by way of trespass or otherwise, and no such repossession shall constitute a termination of this EFA; (f) obtain the appointment of a receiver to enforce Creditor's rights hereunder; (g) proceed by legal action, including judicial reference, to recover from Debtor all damages incurred in connection with any default including liquidated damages for loss of a bargain and not as a penalty, the sum of (i) all unpaid Monthly Payments and other accrued amounts as of the default date, (ii) the present value as of such date (using a discount rate of 3% per annum) of all accelerated Monthly Rentals for the remaining EFA Term, (iii) interest on the total of (i) and (ii)from the default date; (h) re- lease, sell, or otherwise dispose of any item of Equipment, whether or not in Creditor's possession, at one or more public or private sales or other dispositions (each a "Disposition") at any place(s) designated by Creditor and on such terms and in such manner as Creditor may determine, all of which shall be accepted by Debtor as commercially reasonable and final, and, if notice thereof is required by applicable law, Debtor agrees that 10 days' notice is reasonable notice; (i) use and occupy the premises of Debtor for the purpose of taking, holding, reconditioning, displaying, advertising and selling or otherwise disposing of the Equipment, without cost to or liability of Creditor; and/or (j) exercise any other remedy available at law or in equity. If any Disposition occurs, Creditor may apply the net proceeds thereof after deducting all costs of such Disposition (including without limitation, the repossession, transportation, insurance, storage, refurbishment, advertising, commission, and reasonable attorneys' fees and legal expenses), to Debtor's obligations hereunder, with Debtor remaining liable for the immediate payment of any deficiency. No right or remedy of Creditor is exclusive, each is cumulative of every other right or remedy, and each right or remedy may be enforced concurrently, successively and repeatedly. Creditor's partial exercise or delay to exercise any right or remedy shall not preclude any other or further exercise of a right or remedy. Creditor's waiver of any provision of this EFA must be properly authorized in writing and any forbearance by Creditor will not constitute a waiver. If at the end of the original Term or any renewal thereof, Debtor is in default this EFA, then in Creditor's sole discretion, this EFA shall be immediately renewed on a month-to-month basis with all terms and conditions in full force and effect, and Debtor shall pay in advance to Creditor, additional consecutive Monthly Payments at the highest Monthly Payment amount of the previous Term. Such renewal shall not cure Debtor's default and Creditor reserves all of its rights.

17.REPRESENTATIONS AND WARRANTIES OF DEBTOR. Debtor represents and warrants to Creditor that: (a) Debtor is entering this EFA for business purposes and for its own account; (b) this EFA has been duly authorized by all necessary action of Debtor, and each person or entity executing this EFA on Debtor's behalf has full authority to do so; (c) this EFA is a valid and binding obligation of Debtor; (d) Debtor has represented itself and its business affairs to Creditor accurately and completely; (e) all financial and other information which has been and shall be submitted by Debtor or on Debtor's behalf either directly or indirectly to Creditor is and shall be true and complete when submitted; (f) all funds paid by or on Debtor's behalf have been and will be paid in good funds; (g) Creditor has been and will be promptly and accurately advised in writing of any funds paid by or received from Debtor and any Affiliate, Supplier, broker, agent, representative and Guarantor of Debtor pertaining to any agreement between Debtor and Creditor; (h) Debtor shall remain in good standing in its state of organization; and (i) Debtor has reviewed this EFA in an enlargeable format on an electronic device and with legal counsel of its choice, or has had the opportunity to do so and decided not to do so; and (j) Debtor has not altered any terms herein without written consent of Creditor. All of Debtor's representations and warranties shall survive any expiration or termination of this EFA. If there is more than one Debtor, Debtors' obligations hereunder shall be joint and several.

18.SECURITY DEPOSIT, POWER OF ATTORNEY, MISC. The Security Deposit, if any, is payable to Creditor upon execution of the EFA, is non-interest bearing, may be commingled with other funds and shall constitute partial security for Debtor's performance of all its obligations to Creditor, whether now existing or hereafter arising . Any part or all of any Security Deposit, Advance Payments, letter of credit, and collateral held by Creditor may be applied by Creditor to satisfy any amount owed by Debtor, in which event Debtor will promptly restore the full amount to Creditor. After all of Debtor's obligations to Creditor have been fulfilled, the amount of any unapplied Security Deposit and collateral will be returned to Debtor. This EFA constitutes the entire agreement between Creditor and Debtor concerning the subject matter hereof and supersedes all prior or contemporaneous understandings, if any. This EFA cannot be changed or supplemented except as agreed by Debtor and an officer of Creditor in writing; provided, however, that Debtor authorizes Creditor, without notice, to insert or correct (a) omitted information, (b) the Commencement Date, (c) identifying data concerning the Equipment, and (d) a decrease or increase the Monthly Payment amounts to accommodate changes in the cost of the Equipment or in the event of a partial payoff of certain equipment. Debtor shall promptly execute and deliver such additional documents and perform such acts as Creditor shall reasonably request in order to carry out the terms and intent of this EFA. Debtor agrees that, if a signature is necessary and appropriate, Creditor ca[...] and registration or similar document relating to the Equipment as Debtor's attorney-in-fact. If any provision of this EFA is held to be contrary to law, such provision shall be disregarded and the remainder of this E[...] enforceable according to its terms. Debtor agrees that a facsimile or a faxed, scanned or electronic copy of the EFA can be introduced as evidence by Creditor for all purposes.

Please initial this page: AC

E1004 Rev 10/15

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

**Equipment Schedule No. 101768**

**Re: Equipment Financing Agreement No. 101768**

This Equipment Schedule is hereby made a part of the Equipment Financing Agreement referenced above (the "EFA").

**Equipment Location:**
2215 Leavenworth St, Omaha NE, 68102

**Equipment:** all items listed below together with all equipment, parts, manuals, records, accessories, accessions, licensee rights, attachments, substitutions, repairs, upgrades, improvements, certifications, replacements, software and any proceeds thereof, including insurance proceeds.

| Supplier | Description | Serial Number(s) |
|---|---|---|
| Shenzhen Luxon Optoelectronics Technology Co.,Ltd DBA luxon 128# Chonqing Road Fuyong Town, Bao'an, Shenzhen | 240 PH3.9mm Indoor LED Displays (500*500mm carbon fiber) | |

Debtor hereby acknowledges that it has read, executed and does affirm the terms and conditions of the EFA and this Equipment Schedule thereto. Debtor hereby confirms that this Equipment Schedule has been examined by Debtor and is true and correct. Subject to the terms of the EFA, this Equipment Schedule cannot be changed or supplemented except as agreed by Debtor and an officer of Creditor in writing, however Debtor authorizes Creditor to amend and supplement this Equipment Schedule and any applicable Uniform Commercial Code Financing Statement to include serial numbers and any other information in respect of the Equipment as such information becomes available. Debtor agrees that a facsimile or a faxed, scanned or electronic copy of the Equipment Schedule can be introduced as evidence by Creditor for all purposes.

DEBTOR AFFIRMS THAT IT HAS NOT MADE AND WILL NOT MAKE ANY ALTERATIONS OF THIS EQUIPMENT SCHEDULE INCLUDING ANY CHANGES WHATSOEVER TO THE EQUIPMENT ORDER AS DESCRIBED IN THIS EQUIPMENT SCHEDULE AND THAT IT HAS NO RIGHTS TO DO SO WITHOUT THE ADVANCE WRITTEN AGREEMENT BY AN OFFICER OF LESSOR.

**THIS DOCUMENT MAY BE SIGNED IN COUNTERPARTS AND TRANSMITTED ELECTRONICALLY WITH THE SAME FORCE AND EFFECT AS DELIVERY OF AN ORIGINAL.**

**Debtor: Acass Systems LLC**
The undersigned affirms that he/she is authorized to execute this schedule on behalf of Debtor.

Signature: X Aaron Cass

Name: Aaron Cass

Title: Member

Date: 7/12/2018

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

**Creditor:**
**Allegiant Partners Incorporated**
1550 Parkside Drive, Suite 240
Walnut Creek, CA 94596
Telephone: (800) 604-4817
Fax: (888)777-2313

**Debtor:**
**Acass Systems LLC**
**2215 Leavenworth St**
**Omaha, NE 68102**

**Equipment:**
See Equipment Schedule No. **101768** (the "Equipment Schedule")

## DISBURSEMENT & PREFUNDING AUTHORIZATION

| ***Disbursement Amount(s)*** | ***Supplier(s) and/or payee(s)*** |
|---|---|
| $123,850.00 | Acass Systems LLC |

This Disbursement & Prefunding Authorization ("Authorization") is hereby made a part of the Equipment Financing Agreement referenced above (the "EFA"). The capitalized terms used herein are defined in the EFA unless otherwise defined here. If there is more than one Debtor shown above, then each Debtor shall be bound by the EFA and this Authorization, jointly and separately. Debtor agrees that a signed facsimile or faxed, scanned or electronic copy of this Authorization can be introduced as evidence by Creditor for all purposes. Debtor hereby acknowledges that it has read, executed and does affirm the terms and conditions of the EFA, the Equipment Schedule thereto and this Authorization.

**Disbursement Authorization.** Debtor hereby authorizes Creditor to pay for the Equipment in whole or via installments, by advancing to the Suppliers and/or payees listed above, the Disbursement Amount(s) shown above. Debtor agrees that upon the full remittance of Creditor's initial payment(s) to said Suppliers and/or payees, Creditor shall have satisfactorily and fully performed all of its obligations under the EFA.

**Prefund Authorization.** As Debtor desires to receive delivery of the Equipment in a timely manner, Debtor requests that the Suppliers and/ or payees listed above be promptly paid for the Equipment. Debtor explicitly authorizes Creditor to "pre-fund" all or portions of the Disbursement Amount(s) listed above prior to the delivery of the applicable items of Equipment to Debtor. This means that Creditor may render payment to a Supplier or payee prior to the delivery of the applicable Equipment to Debtor and Debtor shall bear all risk of loss therefrom. Debtor's Monthly Payments under the EFA will commence per the terms and conditions of the EFA.

DEBTOR UNDERSTANDS THAT UPON CREDITOR'S PAYMENT OF ANY PORTION OF THE ABOVE LISTED DISBURSEMENT AMOUNT(S), DEBTOR SHALL BE FULLY BOUND BY ALL TERMS AND CONDITIONS OF THE EFA INCLUDING BUT NOT LIMITED TO, THE TIMELY REMITTANCE OF ALL MONTHLY PAYMENTS WHEN DUE. DEBTOR ACKNOWLEDGES THAT CREDITOR HAS NO RESPONSIBILITY AS TO THE SATISFACTORY SELECTION, DELIVERY, INSTALLATION, PERFORMANCE, INSURANCE, STORAGE AND MAINTENANCE OF THE EQUIPMENT AND THAT DEBTOR BEARS ALL RISK OF LOSS IN CONNECTION WITH THE EQUIPMENT. DEBTOR CONFIRMS IT HAS OBTAINED INSURANCE COVERAGE FOR THE EQUIPMENT IN COMPLIANCE WITH THE EFA. DEBTOR ACKNOWLEDGES THAT THE EFA IS NON-CANCELABLE FOR ANY REASON UNTIL ALL OF DEBTOR'S OBLIGATIONS TO CREDITOR HAVE BEEN FULFILLED.

DEBTOR AFFIRMS THAT IT HAS NOT MADE AND WILL NOT MAKE ANY CHANGES WHATSOEVER TO THIS AUTHORIZATION AND TO THE EQUIPMENT SCHEDULE AND THAT IT HAS NO RIGHTS TO DO SO. THIS AUTHORIZATION CANNOT BE CHANGED OR SUPPLEMENTED EXCEPT AS AGREED BY DEBTOR AND AN OFFICER OF CREDITOR IN WRITING.

In reliance upon Debtor's execution of this Disbursement & Prefunding Authorization, Creditor will remit the Disbursement Amount(s) to the Suppliers and/or payees as shown above.

**THIS DOCUMENT MAY BE SIGNED IN COUNTERPARTS AND TRANSMITTED ELECTRONICALLY WITH THE SAME FORCE AND EFFECT AS DELIVERY OF AN ORIGINAL.**

**Debtor: Acass Systems LLC**
The undersigned affirms th[...] ute this schedule on behalf of Debtor.

Signature: X Aaron Cass

Name: Aaron Cass

Title: Member

Date: 7/12/2018

I hereby authorize ______________________, ______________________, ______________________
Name Title Phone
To orally verify my/our acceptance of the above referenced equipment in my absence.

Signature: Aaron Cass
Name: Aaron Cass

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

**CONTINUING PERSONAL GUARANTY**

**To: Allegiant Partners Incorporated ("You")** **Re: Acass Systems LLC ("Customer")**

We the undersigned guarantors agree that there is good and valuable consideration for us to enter into this Guaranty and we will benefit from the success of Customer and the financing being provided to Customer by You. To induce You to provide leasing, financing and/or financial services to Customer, we jointly and severally, absolutely and unconditionally guarantee to You the full and prompt payment in good U.S. dollars and the performance when due of all Customer's obligations (" Indebtedness") to You. We each represent and warrant each of the following: (a) this Guaranty is executed at Customer's request; (b) we have read this Guaranty and are familiar with financing contracts under which you may provide financing to Customer and we understand each of them; (c) this is a valid and binding Guaranty that does not violate any other agreement to which we are a party; (d) we have represented and will continue to represent ourselves and our affairs accurately and completely; (e) we have obtained and will continue to obtain adequate details regarding Customer's business and will share such information with You upon request; (f) we have not commenced and do not intend to commence any bankruptcy proceeding; (g) we have not made and will not make a bulk transfer, lease or assignment of our assets nor has any person or entity attached any asset of ours; (h) we are not in default of any contractual obligations or taxes due and we shall promptly notify You should any such default occur; (i) we shall promptly pay for and maintain all-risk property coverage insuring all our assets valued at more than $50,000 for their full replacement costs; and (j) we shall promptly notify You of any material adverse change in our financial condition and creditworthiness. All of our representations and unfulfilled obligations herein shall survive any expiration or termination of any obligation of Customer to You. We agree that this Guaranty shall be continuing, absolute, primary, and direct and we waive all rights we may have, if any, to require You to (a) proceed against any other entity or person to enforce the Indebtedness, (b) proceed against or exhaust any leased property or collateral relative to the Indebtedness, (c) give us notice with respect to leased, financed, encumbered or other property repossessed from Customer, (d) pursue any other remedy in Your power, and (e) give any notices in connection with the Indebtedness or this Guaranty including as to any additional or modified Indebtedness. We waive all defenses to liability arising from (a) any defense of any other person and/or entity, (b) the cessation, other than by payment and performance in full, of the Indebtedness or Customer's liability therefore, (c) the use of any property leased or financed in connection with the Indebtedness for any purposes including purposes not understood by us, (d) any act or omission by You which directly or indirectly discharges Customer on any Indebtedness or which increases the probability or amount of our liability hereunder, (e) Your failure or delay in enforcing Your rights as to the Indebtedness, (f) an impairment of any security for the Indebtedness or any guaranty thereof, and (g) any other defenses available to us by reason of Sections 2787 to 2855, inclusive, of the California Civil Code. Our waivers include our waiver of all rights and defenses that we may have because any Indebtedness is secured by real property. We waive any statute of limitations affecting our liability hereunder. We agree You may, at Your discretion, obtain the appointment of a receiver at our expense to enforce Your rights hereunder. We have reviewed this Guaranty in an enlargeable format on an electronic device and with legal counsel of our choice, or have had the opportunity to do so and decided not to do so. We have read and understand this non-cancelable Guaranty and we are fully aware of the obligations we are committing to hereunder. This Guaranty will be governed by the laws of California. We agree that this Guaranty has been accepted by You at Your principal place of business in Contra Costa County, California, and our performance is required to be at that address. We agree that any action related, directly or indirectly, to this Guaranty shall, at Your option, be maintained only in a state or federal court in California or in another court selected by You having jurisdiction. This Guaranty shall be binding on our estates, heirs, successors and trusts. Our liability shall be reinstated as to any payment on the Indebtedness that is required to be returned by You. This Guaranty represents our entire agreement relative to the guaranty of the Indebtedness and may not be modified except in a properly executed amendment signed by and officer of You and us. We authorize You, at your option, without notice and without affecting our liability hereunder, from time to time to (a) change, assign, waive, take and dispose of security for and forbear from enforcing, any part(s) of the Indebtedness, and (b) apply payments received on the Indebtedness as You may choose. You may without notice assign this Guaranty in whole or in part. We may not assign our obligations hereunder. The word "Indebtedness" is used herein in its most comprehensive sense and includes all present and future obligations of Customer to You under all agreements, whether now existing or hereafter arising, whether direct or indirect, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined and whether Customer may be liable with others and whether recovery upon such Indebtedness may be barred or otherwise unenforceable for any reason, including lapse of the statute of limitations and the bankruptcy of Customer. Any indebtedness of Customer to us and any ownership and distribution rights from an equity interest we have in Customer are hereby subordinated to the Indebtedness and assigned to You as security for this Guaranty and the Indebtedness. Upon request we shall promptly deliver to You all documents and payments we have pertaining to such indebtedness and such rights. We will pay all of Your reasonable attorneys' fees and all other costs that You incur in the enforcement of this Guaranty and the Indebtedness. Until all of our obligations to You have been fulfilled, we authorize You to obtain credit bureau reports and make such other credit inquiries about us as You may require. We will promptly perform such acts and deliver such documents and information as You may from time to time request to carry out the purposes of this Guaranty and to ascertain our creditworthiness and financial condition. We agree that a signed facsimile or faxed, scanned or electronic copy of this Guaranty can be introduced as evidence by You for all purposes. We agree that we have not altered any terms herein.

**This Guaranty and any document pertaining to this Guaranty may be executed in counterparts and the faxed, scanned or electronic transmission of such document shall have the same force and effect as delivery of an original.**

IN WITNESS WHEREOF, we have executed this Guaranty as of the dates shown below:

Name: *Aaron Cass* Social Security: 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

Signature X: Aaron Cass ______________ Date: 7/12/2018

DocuSign Envelope ID: 69489D67-3396-4C9B-9F40-DB3108D6049F

AP
EQUIPMENT
FINANCING
ALLEGIANT PARTNERS

July 11, 2018

**Debtor:**
Acass Systems LLC
2215 Leavenworth St
Omaha, NE 68102

**Re: Equipment Finance Agreement No. 101768**

Below are the documents for your review and signature. Please read everything carefully before you sign.

Please make sure each document is properly signed by an authorized person and, if applicable, notarized where indicated.

**This Finance Agreement and any document pertaining to this Finance Agreement may be executed in counterparts and the faxed, scanned or electronic transmission of such document shall have the same force and effect as delivery of an original.**

Please Confirm/Complete the following information:

1. **Federal Tax Id** 27-4444765
2. **Primary Entity benefiting from use of the Equipment** Acass Systems LLC
3. **Mobile Phone #:** 7122426379
4. **Name of Nearest Relative:** Colleen Cass
5. **Email of Nearest Relative:** aaron@acass-systems.com
6. **Phone # of Nearest Relative:** 7122426379

Please attach below a copy/photo of the driver's license of each signer.

**Debtor: Acass Systems LLC**
The undersigned affirms that he/she is authorized to execute this agreement on behalf of Debtor.

Signature: X Aaron Cass

Name: Aaron Cass

Title: Member

Date: 7/12/2018

**Thank you for doing business with Allegiant Partners Incorporated**
Allegiant Partners Incorporated | 1550 Parkside Drive, Suite 240, Walnut Creek, CA 94596
P: (800) 604-4817 F: (888) 777-2313

NE Sec. of State-UCC
9818056037-5
Filed: 07/10/2018 05:16 p.m.
ACASS SYSTEMS LLC
Pg: 1 of 1

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CORPORATION SERVICE COMPANY (800-858-5294)

B. E-MAIL CONTACT AT FILER (optional)
FILINGDEPT@CSCINFO.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ACASS SYSTEMS LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2215 LEAVENWORTH ST | OMAHA | NE | 68102 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ALLEGIANT PARTNERS INCORPORATED | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1550 PARKSIDE DR STE 240 | WALNUT CREEK | CA | 94596 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

EQUIPMENT: ALL EQUIPMENT DESCRIBED BELOW TOGETHER WITH ALL PARTS, ACCESSORIES, ATTACHMENTS, SUBSTITUTIONS, REPAIRS, IMPROVEMENTS AND REPLACEMENTS AND ANY AND ALL PROCEEDS THEREOF, INCLUDING WITHOUT LIMITATION, INSURANCE PROCEEDS. 240 PH3.9MM INDOOR LED DISPLAYS (500*500MM CARBON FIBER)

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
A0X0G000016WO3EQAW[149092307]

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-81299-SKH |
| ACASS SYSTEMS LLC | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY**

THE DEBTOR HEREIN, ACASS Systems LLC, and Allegiant Partners, Inc., a secured creditor, by and through their respective counsel, hereby stipulate and agree that Allegiant Partners, Inc. should be granted relief from the automatic stay under 11 U.S.C. §362, for purposes of taking possession of its collateral, described as two hundred forty (240) PH3.9mm Indoor LED Displays and any and all packaging, instructions, parts and accessories included with the Displays (hereinafter the "AP Collateral").

In consideration of granting relief as further described herein, Allegiant Partners shall, upon receipt of the AP Collateral in substantially the same condition that it was delivered to Debtor, be deemed to have waived any unsecured deficiency claim it might have against Debtor which may result from the later liquidation and sale of the AP Collateral; provided that nothing herein shall constitute a release or waiver, and nothing herein shall otherwise affect the liability of any guarantor of the debt owed to Allegiant Partners. In the event the AP Collateral has been damaged while in Debtor's possession, beyond the ordinary anticipated wear and tear due to delivery, the provisions of this stipulation with regard to the unsecured deficiency claim shall be null and void, but the other provisions of this stipulation shall stand as written.

The consent to stay relief as described herein shall include consent to not only relinquishment of possession of the AP Collateral, but in addition shall include stay relief for

Allegiant Partners to sell, lease, transfer or retain the collateral, as it shall determine in its sole discretion.

Agreed to this 6th day of November, 2018.

**ACASS Systems, LLC, Debtor**

By: s/Patrick Turner
Stinson Leonard Street LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102
T: 402.930.1708
F: 402.829.8736
Patrick.turner@stinson.com
Counsel for the Debtor

**ALLEGIANT PARTNERS, INC.**

By: s/T. Randall Wright
Baird Holm LLP
1500 Woodmen Tower
1700 Farnam St.
Omaha, NE 68102
T: 402.636.8228
rwright@bairdholm.com
Counsel for Allegiant Partners, Inc.

DOCS/2165692.1

EXHIBIT
C